**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

LORA FLINT o/b/o
RICK FLINT (deceased),                               :

                Plaintiff,

    -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.           :

Case No. 3:07-cv-211

District Judge Walter Herbert Rice
Chief Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

        Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits.[1] The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

        Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a

---

[1] Plaintiff Lora Flint is Rick Flint's mother. Rick Flint died during the pendency of the administrative process and his mother has been substituted as the party of interest. (Tr. 120). However, for ease of reference, and because the application at issue is Rick Flint's application, the Court's reference to Plaintiff throughout this Report is a reference to Rick Flint.

reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any

other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on June 26, 2002, alleging disability from June 14, 2002, due to diabetes, a hearing impairment, a sight impairment, a low back impairment, and poor circulation. (Tr. 103-05; 126). Plaintiff's application was denied initially and on reconsideration. (Tr. 87-89; 91-93). A hearing was held before Administrative Law Judge Melvin Padilla, (Tr. 327-52), who determined that Plaintiff was not disabled. (Tr. 43-56). The Appeals Council granted Plaintiff's request for review and remanded the matter for further administrative proceedings. (Tr. 57-60).

Judge Padilla held a hearing on remand, (Tr. 353-85), and again determined that Plaintiff was not disabled. (Tr. 16-30A). The Appeals Council denied Plaintiff's request for review, (Tr. 6-10), and Judge Padilla's decision became the Commissioner's final decision.

In determining that Plaintiff was not disabled, Judge Padilla found that Plaintiff had severe obesity, diabetes mellitus with neuropathy, disc disease of the cervical spine, and myasthenia gravis, but that he did not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 29, finding 3). Judge Padilla also found that Plaintiff had the residual functional capacity to perform a limited range of light work. *Id.*, finding 5; Tr. 30, finding 7. Judge Padilla then used sections 202.20 through 202.22 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. *Id.,* findings 11, 12. Judge Padilla concluded that Plaintiff was not disabled and therefore not entitled to benefits under the Act. (Tr. 31).

In March, 2002, then-treating physician Dr. Wilcher diagnosed Plaintiff with diabetes and he noted that Plaintiff responded well to medication to control his blood sugar. *See,* Tr. 161-79. Dr. Wilcher also noted that Plaintiff's right eyelid drooped and had done so for the past 2-3 years. *Id.* Dr. Wilcher noted further that Plaintiff complained of some dizzy spells. *Id.*

In January, 2003, treating physician Dr. Perilman noted that Plaintiff reported that the ptosis of his right eyelid was affecting his vision. (Tr. 292-93). Dr. Perilman also reported that Plaintiff complained that his feet were always cold and tingling. *Id.*

Consulting ophthalmologist Dr. Fleischman reported that Plaintiff had vertical and horizontal double vision with ptosis of both eyelids. (Tr. 268). Dr. Fleischman also reported that Plaintiff complained that he did not have the double vision and ptosis in the morning but that it

progressed and became more pronounced during the day. *Id.* Dr. Fleischman noted that Plaintiff had daily headaches and weakness and numbness in his upper extremities. *Id.* Dr. Fleischman also noted that Plaintiff had markedly reduced eye movements on the right and he suspected Plaintiff had myasthenia gravis. *Id.* An MRI of Plaintiff's brain which was performed February 27, 2003, revealed questionable findings of the right optic nerve and findings suspicious for demyelinating disease. (Tr. 180).

Plaintiff consulted with neurologist Dr. Goldstick in June, 2003. (Tr. 195-03). Dr. Goldstick reported that Plaintiff had a drooping eyelid and incomplete movement of the eye when looking downward which increased with fatigue of the eye. *Id.* Dr. Goldstick also reported that results of a lumbar puncture were negative for multiple sclerosis and an MRI of the cervical spine revealed some disc herniations at C4-5 and C5-6. *Id.* Eventually, Dr. Goldstick determined that Plaintiff had myasthenia gravis, but that it was occular rather than generalized. *Id.*

Plaintiff continued to report experiencing numbness of his hands and feet and that the numbness in his feet extended to his ankles. *Id.* A July 31, 2003, EMG revealed evidence of peripheral polyneuropathy consistent with diabetes. (Tr. 191-92). It also reflected reduced medial motor response in Plaintiff's right arm and further suggested a bilateral L4-5 radiculopathy. *Id.*

Consulting physician Dr. Saleh reported on September 8, 2003, that Plaintiff was morbidly obese and had a history of diabetes and that a recent CAT scan revealed an enlarged thymus gland with some nodular areas suggestive of thymoma. (Tr. 223-26). Dr. Saleh recommended that Plaintiff have a thymectomy which Plaintiff underwent on October 22, 2003. *Id.*

Plaintiff was hospitalized December 8-12, 2003, with the diagnoses of asthma, chronic obstructive pulmonary disease, pleural effusion, myasthenia gravis, sleep apnea, hypopnea,

syncope, obesity, and diabetes mellitus. (Tr. 227-63). Plaintiff underwent a thoracentesis, was stabilized, and discharged. *Id.* Subsequently, Plaintiff developed congestive heart failure and he died on December 23, 2003. (Tr. 277; 119).

Dr. Fleishman reported on December 20, 2003, that he last saw Plaintiff on November 12, 2003, at which time he had no double vision and that the ptosis had resolved. (Tr. 264-69). Dr. Fleishman also reported that Plaintiff's vision was limited by his bilateral cataracts and intermittent diplopia. *Id.*

Dr. Perilman reported on March 9, 2004, that Plaintiff was his patient from January 24, 2003, to December 8, 2003, and that his diagnoses included diabetes mellitus type II, obesity, neuropathy, bilateral ptosis secondary to myasthenia gravis, hypertension, and lumbar compression fractures. (Tr. 270-71). Dr. Perilman also reported that after undergoing a thymectomy, Plaintiff developed congestive heart failure and that he died from complications. *Id.* Dr. Perilman opined that Plaintiff would have been disabled from the work force secondary to his conditions. *Id.*

Dr. Perilman opined in March, 2007, that Plaintiff had been able to occasionally lift up to 25 pounds, frequently lift up to 10 pounds, stand/walk for ½ hour in an 8-hour workday and for ½ hour without interruption, that his ability to sit had not been impaired, that he should never climb, balance, stoop, crouch, kneel, or crawl, and that he had not been able to perform medium, light, or sedentary work. (Tr. 272-76).

A medical advisor testified at the hearing that Plaintiff did not meet or equal any of the Listings, that the biggest restriction was that he could not perform medium or heavy work but could perform light or sedentary work. (Tr. 365-80).

Plaintiff alleges in his Statement of Errors that the Commissioner erred by failing to find him disabled where he failed to describe the weight he was giving to Dr. Perilman's opinion. (Doc. 9).

In general, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540 (6th Cir. 2007), *citing, Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997) (citing 20 C.F.R. § 404.1527(d)(2) (1997)). In other words, greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Cruse,* 502 F.3d at 540 (alteration in original) (quoting 20 C.F.R. § 404.1502). However, a treating physician's statement that a claimant is disabled is of course not determinative of the ultimate issue. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

While it is true that a treating physician's opinion is to be given greater weight than that of either a one-time examining physician or a non-examining medical advisor, that is only appropriate if the treating physician supplies sufficient medical data to substantiate that opinion. *See, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461

U.S. 957 (1983); *see also, Bogle v. Sullivan,* 998 F.2d 342 (6th Cir. 1993).  A treating physician's broad conclusory formulations regarding the ultimate issue of disability, which must be decided by the Commissioner, are not determinative of the question of whether an individual is under a disability.  *Id.*  Further, the Commissioner may properly reject a treating physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record.  *Cf., Kirk, supra; see also, Walters, supra.* Even though an ALJ is not bound by a treating physician's opinion, he must set forth his reasons for rejecting the opinion.  *See Bowen v. Commissioner of Social Security,* 478 F.3d 742 (6th Cir. 2007); *see also, Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).

In rejecting Dr. Perilman's opinion that Plaintiff was disabled, in his June 13, 2006, decision, after noting that it was conclusory, Judge Padilla determined that the opinion was not supported by medically-acceptable evidence and was inconsistent with other evidence of record. (Tr. 26).  Indeed, in his August 26, 2004, decision, Judge Padilla rejected Dr. Perilman's opinion for the same reasons.  (Tr. 54).  Specifically, Judge Padilla noted that Dr. Perilman's opinion was not supported by medically-acceptable evidence because the there were relatively unremarkable physical examination findings prior to October, 2003.  (Tr. 26).  In addition, Judge Padilla determined that Dr. Perilman's opinion was inconsistent with the other evidence of record, particularly, Dr. Fleishman's opinion as well as the MA's opinion. (Tr. 26-27).  This Court cannot say that Judge Padilla erred.

Although Dr. Perilman opined that Plaintiff would have been disabled from the work force and that he was not capable of performing medium, light, or sedentary work, his contemporaneous office notes contain few objective findings other than ptosis of the eyelids.  (Tr.

272-94). In addition, Dr. Fleishman's notes indicate that Plaintiff had a fairly good response to treatment and that his ptosis had resolved and he had, at worst, intermittent diplopia. (Tr. 264). Further, Dr. Goldstick noted that Plaintiff was doing very well from a neurological standpoint. (Tr. 208). Finally, Dr. Perilman's opinion is inconsistent with the MA's opinion that Plaintiff was able to perform light and sedentary work. Under these facts, and contrary to Plaintiff's argument, the Commissioner gave adequate reasons for rejecting Dr. Perilman's opinion that Plaintiff was disabled.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

March 27, 2008.

*s/ Michael R. Merz*
Chief United States Magistrate Judge

NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).